May it please the Court and Counsel, I'm Bear Wilner, Nugent for William Blackford. Mr. Blackford received affirmative misadvice about the consequences of his guilty plea. And Mr. Blackford was willing to serve three years in prison, but he was not willing to serve three years in prison and be dogged by a host of life-altering consequences of which he had not been informed. Had he been willing to serve the very long potential sentence that he would have received had he gone to trial and been convicted, which could have been up to 30 years in prison, would he not have faced post-prison issues very similar to this, sex offender registration and so on? Yes, but that was also the only possibility for him to avoid those consequences. And he testified and the state did not seek to controvert that testimony before the post-conviction trial court. He testified unequivocally that he would have, had he known what he knew later, gone to trial. And what's interesting about the post-conviction trial court Well, everyone says that in these circumstances, but is that realistic where he got basically 10% of the sentence he could have gotten? I think it is realistic. I think we have to accept it as realistic because we cannot change the factual record that was developed No, I understand that. But do we have to take as absolutely true that he would have made that different decision or do we get to consider the circumstances? I think that the post-conviction trial judge had the opportunity to make findings about credibility and she made no adverse findings about credibility in the post-conviction opinion and order that was presented by the state in the supplemental excerpt of record. And I think that that addresses really the prejudice prong here for Mr. Blackford. What about the first prong of Strickland? About the first prong, I should say, first of all, that I used the phrase collateral consequences in my briefs to refer to the conditions about which I contend Mr. Blackford was affirmatively misadvised. But on reflection, I think that it's better to say that these really are direct consequences of a plea to a crime like this because they're definite and they're automatic outcomes of the plea. Yes, but what clearly established federal law required that he be advised of this in particular? Well, our contention is that the boilerplate law on ineffective assistance of counsel in the guilty plea context has always required that counsel not affirmatively misadvise his or her client. If I could ask you to speak a little more solely, I think it's an echo or something, but I'm having just a little bit of a hard time understanding you. Could you repeat your last, I'm sorry? The Oregon Court of Appeals also tells me to slow down. If you could repeat, I bet it's a little hard for Judge Noonan as well on the telephone. Could you just run that by me one more time? Certainly. So the answer with regard to performance is that the boilerplate federal law on ineffective assistance of counsel in the guilty plea context at a minimum has always required that counsel not affirmatively misadvise the client about the consequences of a guilty plea or another decision to waive a constitutional right that prejudices the client. And so the problem is we get trapped in the direct consequence versus collateral consequence morass, and I think that frankly is what permits counsel to use the concept of Padilla being nonretroactive against us. I think this case is different from the immigration set of consequences described by Padilla and that we are really foreclosed from relying on by Chaydez because there's a very important legal principle that distinguishes immigration consequences from sex offender consequences. As I said before, sex offender consequences are automatic consequences of a plea and they're definite. They're imposed by operation of law. But what would it have been if he had been convicted, right? Yes. What about the fact that, as I understood the claim, it really was that he didn't get a good explanation of what registration entailed, not that he didn't know about it. His plea agreement specifically notes that sex offender registration is required. And his testimony, as I recall it, was, well, I thought it was going to be really simple. You just show up. So he knew about it. And whether he knew a little bit more about it seems, you know, like maybe a fine point. But he had to not only register once a year on his birthday, as he was told by counsel, and that's why he keeps saying affirmative because the counsel told him he had to do something, but the list was so incomplete as to constitute misadvice because the counsel didn't tell him, for example, that he had to register every time he moved, every time he changed jobs, if he chose to go back to school. And, moreover, counsel didn't tell him that he would lose his ability to access the Internet, lose his ability to do his job as a cable installation technician, that he would be subject to penile plethysmography and so forth. And what I was trying to say about sex offender consequences versus, for example, immigration consequences, is that in the immigration context, there's some law enforcement discretion. There's federal executive branch action that has to be taken to, for example, initiate removal proceedings against an alien who has been convicted of a serious crime. But there are no such discretionary interventions for registered sex offenders. As I said, by operation of law, he has a duty to perform certain actions and refrain from other actions, or he is guilty of a new crime. And being exposed to conviction for a new crime for things of which he was not correctly advised undermines the knowing quality of his plea. I want to go back to the prejudice prong again. At the time of pleading guilty, and, again, I may be misremembering this, but it seems to me that what he stated to the court at the time was, these are measure 11 crimes. I could spend a ton of time in jail, and my wonderful lawyer has told me that this is the only way I can spend a lot less time in prison, and that's why I'm accepting this. And I guess I just have a hard time seeing that he would have risked a sentence of 30 years instead of three. It is hard to imagine because the client did not imagine at that time all the aspects that becoming a registered sex offender would entail, and I think that to the extent that that sounds. So he'd rather spend 27 more years in prison than have to register when he moves? Well, there's no certainty that he would have received 27 years in prison. The indictment charged him with, for example, two different crimes for touching very closely related parts of the victim's body. Those charges might very well have merged on conviction under Oregon law. But if he had been convicted of any one of those charges, he was going to have this requirement, right? Yes, that is correct. The sex offender registration and post-prison consequences could follow from any of those five original charges. The state had an opportunity below, before the post-conviction trial court, to engage in any legitimate attack it wished to engage in on Mr. Blackford's credibility as a witness in his own case as a petitioner. And it had the opportunity, for example, to call counsel to rebut Mr. Blackford's claims. And this is an unusual case in that we do not have statements from counsel appearing in the post-conviction record, which both parties had, by law, an equal opportunity to develop. So I'll say one last thing about procedural default, and then I'd like to reserve a couple of minutes if possible. The state argued that this claim was procedurally defaulted because the post-conviction appellate brief and petition for review did not include a full discussion of both sex offender registration and post-prison supervision conditions. But I think that fairly presenting and exhausting a claim under Baldwin v. Reese, for example, simply requires a good faith attempt to present the same federal constitutional basis for the claim at every level without altering what part of the federal constitution and what body of case law one is relying on, and does not require copying and pasting the same factual citations from the trial court record. And with that, I'll reserve if possible. You may do that. Thank you. Thank you. May it please the court, counsel. Greg Rios for respondent, the Oregon Board of Parole. As an initial matter, because it relates to both the prongs one and two of Strickland, I'd like to identify the nature of the misadvice or omitted advice that Petitioner contended trial counsel was ineffective for failing to give him. And on page 17 and 18 of Petitioner's brief, it talks about, well, first I'd like to say, I should have started with this, that it is undisputed that there was some discussion about post-prison supervision conditions. Petitioner himself said that there was a discussion about that. And it's undisputed that there was some discussion about sex offender registration and even lifetime sex offender registration. So what is disputed is whether there was further information regarding registration about the duty to change, to notify the state police when Petitioner changed his residence, schooling, or employment. And you wanted us to look at 17. 17 and 18 of the brief. And actually 18 is where they start talking, where the brief discusses the omitted aspects of the sex offender post-prison package. And so the omitted advice then, starting with the bulleted points on page 18, is being listed on a national sex offender registry. My brief research on that indicates that that began in 2006. So we're talking about a 2004 plea, and we need to look at the law at that time. And then not being able to live with or near minors. That is one of the standard conditions under the statute. Being subject to plethysmograph examinations. That is one, although that I think is per P.O., so that's not a mandatory one. Losing patient psychotherapist privilege. Yes, that's necessary, because if you're doing sex offender treatment, then your treatment providers need to know what's going on. Not being able to have an Internet connection. So my review of the statute at that time says nothing about an Internet connection. Now, may that be a special condition? Perhaps that could be a special condition. But the condition is only focused on not possessing pornographic materials and says nothing about Internet connection. And this business about the effect on his work is interesting to take a closer look at, because that flows merely by the fact that he's a convicted felon of a sex offense. And I think it would be self-evident to Petitioner that that conviction would have adverse consequences for him. That has nothing to do with his registry, which I don't believe is disseminated. That information is not disseminated. Or the sex offender condition. So a large part of his claim is the adverse economic consequences that simply are unrelated to his claim of misadvice. And, in fact, that paragraph goes on to talk about how he's been unable to get a job. Well, I don't think that. I think that is beyond the scope of the record. That's not in the record. That happened after he was released from prison. And that, I think, is not evidence that this Court can consider. But your argument isn't that these are not burdensome conditions, is it? No. The argument is just that if we are looking at the burden on Petitioner, which is important to evaluate both prongs, then we really need to know what is at stake here. And then further, if this Court does accept the procedural default argument, then all of these conditions fall out of the case. And really what we're looking at is the conditions of notifying the State Police for change of employment, address or. . . I have a hard time with you. Just speaking for myself, I have a hard time with your procedural default argument. Because it seems to me that throughout there has been an emphasis or an attempt to emphasize the consequences, the collateral consequences of the plea. From my part, it would be helpful if you'd focus on Strickland. Absolutely. And actually what I'll focus mostly on, because it seemed to be where the questioning was focused on, is the prejudice prong. And I think that Hilvey Lockhart is actually a very useful template for this Court here, because that is a case in which the Court considered the consequence of parole eligibility. In that case, Petitioner, when he pleaded guilty to murder and theft, he believed that he would be considered for parole at half of his sentence. What he didn't know, because his attorney did not inform him, was that his prior conviction of a felony actually made it. . . I'll back up. He thought he would be eligible at one-third, but because he had a prior felony, he would not be eligible until one-half of his sentence was served. The Court decided that it didn't need to consider the performance prong, because Petitioner had not established prejudice. And in making that finding, the Court pointed out that he expressed that he read the plea petition, that he had talked to his attorney and was satisfied with his advice, and that at the time when he was considering the plea, there was no evidence that he was concerned at all about parole eligibility. And that applies here as well. There's no evidence at all that Petitioner was even thinking about the collateral consequences of his conviction as a sex offender. In fact, even in post-conviction, on a question, I believe, at a PCR trial from his own attorney, his attorney said, well, didn't you see the conditions or you had heard of the conditions? Why didn't you focus on them? And he said, at the time, I thought that was a minor detail. I was facing these Measure 11 charges, and I really wasn't thinking about it. So the record is scant or nonexistent as to Petitioner's proving prejudice under the Hill standard, which requires you to go back to the time of the plea and determine whether you would have insisted on going to trial had you not been properly advised. So could you just spend a minute on Judge Graber's question then? I think the evidence is very scant, and he was facing a lot of jail time. We understand that, and that is often the case. But what do we do about the fact that that's the only evidence we've got is what he says now? Well, and that goes to a point I wanted to make to disagree with my opponent's representation of the State not controverting the evidence. In a state post-conviction proceeding, the burden shifts to the Petitioner, and the State can sit on their hands and just see what Petitioner comes up with. And in this case, it was a good case to sit on your hands because there was a lot of evidence from the criminal trial record that was supportive, and that was contradictory to Petitioner's statement that, yeah, now if I knew what I would have known, I would go back and seek a retrial, which isn't even the focus. It's not what he knows now. I mean, you can learn a lot of things after the guilty plea. I mean, you can learn that the law has changed and that witnesses are no longer available, and that's why that is not the standard. That's why you have to go back because it comes from Strickland's requirement that the alleged error has to affect the outcome of the proceeding at the time. And as to that, we can look at the sentencing colloquy at the time of sentencing. Absolutely. And the sentencing colloquy, which spans almost 20 pages, is replete with what covers his allocution, which is replete with his basically his theme was, I think I'm innocent, but I am pleading guilty. I'm giving three years of my life over despite the fact that I believe I'm innocent because I don't want to risk spending more than a decade of my life at the age of 45 in prison. And I think those are sort of the starkest facts that we have and the best evidence that we have of what was going on in Petitioner's mind at the time. I think his flip about a minor detail was a very apt one, and I think what the post-conviction court, how the post-conviction court viewed the case, that, yes, it was a difficult choice, but you weren't thinking about these circumstances at the time because there was bigger fish to fry, namely. Well, maybe, but isn't that consistent, his characterization, isn't it consistent with what I understand him to be arguing now, which is that what he understood this entailed was simply reporting once a year on his birthday. Right. And my answer to that would be sort of the way that it was disposed of in the PCR court, which I read the courts or the PCR court's order as saying, as a factual matter, I just don't believe that there was any advice lacking here. And the evidence to support that was the attorney's representation that he had discussed post-prison and sex offender registrations, the prosecutor's representation that he had given a sheet of paper over with post-prison supervision conditions to counsel and the court, and then petitioners and petitioners later, also all of the things that he said about how he was satisfied with his attorney. I mean, even later on, I think, no, maybe it was at the time that he said his attorney met with him every weekend. His attorney was sophisticated enough to actually get a sex offender evaluation as a bargaining chip in the plea negotiation procedure. So I think there's all kinds of evidence to support the PCR court's determination that there was no lacking evidence, and that's why there was a denial of the effective assistance of counsel claim, particularly under ADPA, deferential ADPA standards. Thank you, counsel. Thank you very much. Mr. Wilner-Newton, you have some time remaining. Thank you, Your Honor. With regard to prejudice, if you look at the State's brief, page 9, quoting the supplemental excerpt of record, page 80, which is the end of Mr. Blackford's post-conviction trial testimony. Did you say 8-0, page 80? 8-0 of the SER, yes. Okay, thank you. Counsel asks, would you prefer to be tried again on these charges, even though you might have to do significantly more prison time than you'd already done? Mr. Blackford's answer was, absolutely. But is opposing counsel correct that what we need to look at is what he would have done at the time and not what he's decided now he would have done? Yes, and I think in that regard, you know, his sentencing colloquy, he talked about how devastating the Measure 11 penalties were, and he said he was scared to go to prison and he wasn't willing to give up a decade of his life to go to prison. Wasn't that his focus? I think we have to look at all of the evidence together, both the evidence from the time of his sentencing and the evidence from the post-conviction trial, and I think we are permitted to argue that there are inferences, reasonable inferences that can be drawn from that total universe because we can never rewind the clock back to the time of the plea. We have to use evidence to establish what would have happened. You're right, and counsel's right, that it does have to be evaluated through the lens of the facts and the laws that existed at the time of the plea in 2004, not the time of the post-conviction trial in 2006. But that is not to say that somehow evidence introduced at a post-conviction trial, which Oregon law allows evidence to be introduced as a matter of course, that's not optional. There has to be some use for that evidence, some ability to argue an inference about the facts as they existed at the time of the original plea. And for that reason, I'd ask the Court to reverse the judgment below. Thank you. Thank you very much. We appreciate the arguments of both counsel and the cases taken under advisement.
judges: NOONAN, GRABER, CHRISTEN